[No. A107792. First Dist., Div. One. Oct. 12, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES DAGGS, Defendant and Appellant.

## Counsel

Susan K. Amato, under appointment from the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Gregg E. Zywicke, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**STEIN, J.**—James Daggs entered a plea of no contest to one count of robbery after the court denied his motion to suppress evidence. The court suspended imposition of sentence and placed defendant on supervised probation for three years on condition that he serve eight months in county jail, and required him to pay restitution and fines. He filed a timely notice of appeal.

We shall find no error with respect to the court's determination that defendant abandoned his cell phone at the scene of the robbery, and therefore no unlawful search occurred when the police removed the battery to view numbers identifying the phone.

## FACTS

On December 7, 2003, Felix Bria, a clerk at a Walgreen's store, saw defendant go behind a counter and grab several cartons of cigarettes. Bria tried to stop defendant by grabbing his arm. Defendant spun around, sprayed Bria in the eye with pepper spray, and ran from the store. After the police arrived on the scene, they found a cell phone in the area near the cash register where Bria had confronted defendant. Bria had used that cash register 10 to 15 minutes before his confrontation with defendant and had not seen a cell phone in that area.

No one tried to claim the cell phone during the 20 to 30 minutes that the officers remained on the scene. The cell phone was booked into evidence at the police station. One week after the robbery there still had been no attempts to claim the phone. Detective Moran removed the battery to determine the ownership of the phone. He observed the electronic serial number, hex number and decimal number. Using these numbers, he obtained a search warrant to compel the telephone company to release the subscriber's name, telephone number, and telephone records. The subscriber was Charles Daggs, defendant's brother. He informed the police that he had given the phone to defendant in August 2003. The police also contacted defendant's mother, and she confirmed that Charles had given the phone to defendant.

At the hearing on the motion to suppress defendant testified that he realized he had lost his cell phone a few hours after the incident at Walgreen's, and assumed he had dropped it there. Before he lost it, he had locked the phone to prevent anyone else from using it, or accessing any information stored on the phone. He wanted his cell phone back, but decided not to try to retrieve it, because he believed that the police would already have it, and if he associated himself with the phone he might be arrested.

## ANALYSIS

Defendant's motion to suppress did not challenge the seizure of the phone at the scene of the robbery. Instead, he contended that Detective Moran performed an unlawful search when he removed the battery to find the identifying numbers on the phone, and that since these numbers were included in the warrant used to compel disclosure of the subscriber's name,

that information, statements of defendant's brother and mother linking defendant to the phone, and other evidence were all fruits of the illegal search, and must be suppressed. The court found that no illegal search occurred because defendant had abandoned the phone. It therefore denied the motion to suppress.

■ It is well established that a search and seizure of abandoned property is not unlawful because no one has a reasonable expectation of privacy in property that has been abandoned. The question whether property is abandoned is an issue of fact, and the court's finding must be upheld if supported by substantial evidence. (*People v. Ayala* (2000) 24 Cal.4th 243, 279 [99 Cal.Rptr.2d 532, 6 P.3d 193].) Defendant asserts that, in this case, the substantial evidence standard does not apply because he raises only an issue of law, based upon what he asserts were undisputed facts. He argues that the undisputed fact that he accidentally left his cell phone at Walgreen's, and would have reclaimed it had he not feared arrest, compels the legal conclusion that he did not voluntarily discard the phone, and therefore he did not abandon it, but merely "lost it." It is unnecessary to resolve defendant's contention that he is entitled to de novo review because we would reach the same conclusion under either standard: Defendant abandoned the cell phone when he left it unattended in a public place of business, at the scene of a crime, fled, and made no attempt to reclaim it.

■ It is, of course, well established that property is abandoned when a defendant voluntarily discards it in the face of police observation, or imminent lawful detention or arrest, to avoid incrimination. Thus, for example, in *People v. Brown* (1990) 216 Cal.App.3d 1442 [265 Cal.Rptr. 552] (*Brown*), the court held "defendant's act of dropping the bag before making a last-ditch effort to evade the police supports the trial court's finding that defendant indeed abandoned the paper bag and lost any reasonable expectation of privacy in its contents." (*Id.* at p. 1451.) Defendant contends, however, that since it was undisputed that he *accidentally* dropped the phone at Walgreen's, the court could not find that he intentionally or voluntarily discarded it. Defendant's testimony, assuming it were credited, would support an inference that at the moment he first dropped the phone he did not subjectively intend to discard it. Nonetheless, his own testimony also unequivocally established that as soon as he realized he had left the phone behind, he made a conscious and deliberate decision not to reclaim his phone, and never did. He therefore voluntarily abandoned it.

■ In any event, the intent to abandon is determined by objective factors, not the defendant's subjective intent. " 'Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other *objective*

facts. [Citations.] Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.'" (*Brown, supra,* 216 Cal.App.3d at p. 1451, italics added; see also *In re Baraka H.* (1992) 6 Cal.App.4th 1039, 1048 [8 Cal.Rptr.2d 221]; *United States v. Jones* (10th Cir. 1983) 707 F.2d 1169, 1172.) Bria informed the officers who found the phone at the scene that he had not seen the cell phone in that area prior to his confrontation with the robber. No one else at the scene claimed the phone, nor did anyone assert a claim to it in the week after the robbery. It was inferable that the telephone belonged to, or had been in the possession of, the robber who had fled the scene, thereby evincing his intent not to reclaim it. Therefore, when the police seized the phone, and certainly by the time Detective Moran finally performed the challenged search, these circumstances were all objective indications that defendant had discarded the phone, and would not reclaim it.[1]

 Defendant nonetheless argues that his failure to make any attempt to reclaim the phone should not be considered as a factor indicating abandonment because he testified he would have attempted to reclaim it, were it not for his fear that doing so would incriminate him. Although we have found no California case directly addressing such a novel argument, a nearly identical contention was squarely rejected in a well-reasoned federal decision, *United States v. Oswald* (6th Cir. 1986) 783 F.2d 663. In that case, Oswald was carrying a suitcase packed with illegal drugs in the locked trunk of his car. While on the road, he had the misfortune to experience car problems that caused the car to burst into flames. Knowing he would be, as he put it, "dead" if associated with the burning car and suitcase, the defendant made no attempt to notify the police or fire department about the burning car, or to put the fire out himself. Instead, he flagged down a passing motorist, and fled the scene. He did later try to find where the car had been towed, but made no direct attempt to claim it, or the suitcase, because of the obviously incriminating circumstances. Like defendant, Oswald argued he did not abandon the suitcase because he did not voluntarily leave the car, or the suitcase, or fail to reclaim the suitcase once the fire was extinguished, but rather did so under the compulsion of fear of certain arrest. The court responded: "[A] guilty

---

[1] These facts distinguish *U.S. v. David* (D.Nev. 1991) 756 F.Supp. 1385, one of the cases upon which defendant relies, because they are all objective indications that defendant actively disassociated himself from the phone, and by his conduct disclaimed it. In *David*, the court rejected the government's contention that a warrantless search of a computer book was valid because the defendant abandoned the book when he left it in the custody of federal agents overnight. The court noted the defendant did not "disclaim ownership of the book, or attempt to disassociate himself from it. Nor, clearly, did he tell the agents they could keep it. He merely left it in the agents' custody overnight for safekeeping, with the understanding it would be returned to him the next day." (*Id.* at p. 1391.)

conscience cannot create an expectation of privacy that would not otherwise exist. Where an ordinary person could fairly be said to have abandoned his privacy interests by failing to come forward, a reasonable expectation of privacy cannot be thought to have been retained solely by virtue of the fact that the person happens to be guilty of a crime. . . . [¶] That Oswald may have entertained a feeble hope of regaining possession of the cocaine is hardly enough to vitiate the finding of abandonment." (*Id.* at p. 667.) For the same reasons, we hold here that irrespective of his subjective reasons, the failure of defendant to attempt to retrieve the phone is an objective circumstance indicating that it had been abandoned.[2]

■ Defendant also incorrectly asserts that a finding that he abandoned the phone is inconsistent with his testimony that he wanted the phone back and did not mean to give it up. Abandonment may be found even when the defendant does not intend "to permanently relinquish control over the object." (*In re Baraka H., supra,* 6 Cal.App.4th at p. 1048.) This is so because abandonment is not defined strictly in terms of property rights. Instead, " ' "what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein." ' [Citation.] If the defendant has so treated the object as to relinquish a reasonable expectation of privacy, it does not matter whether formal property rights have also been relinquished." (*Ibid.*) Applying this standard in *Baraka H.,* the court held that the defendant did not have an objectively reasonable expectation of privacy in a crumpled paper bag containing marijuana that he left on a sidewalk while he solicited buyers. By placing the crumpled bag beyond his reach in a public place, the bag appeared to be discarded. The court held that his secret intention to assert his right to the bag, should a passerby come upon it, was not, under these

---

[2] Defendant relies on *State v. May* (Me. 1992) 608 A.2d 772 (*May*) for the proposition that his failure to make any attempt to claim his phone is not an objective circumstance supporting the legal conclusion that he abandoned it since it would have been incriminating to claim the phone. In *May,* the trial court found that the defendant had initially merely inadvertently left his wallet in the backseat of a patrol car. Nonetheless, it concluded he abandoned it later by shrugging his shoulders when an officer, who had seen defendant take his license out of a wallet earlier, noted its absence. The court of appeal reversed, finding defendant's shrug to be too equivocal to suggest that he disclaimed or intentionally discarded the wallet. It reasoned: " 'To equate a passive failure to claim potentially incriminating evidence with an affirmative abandonment of property would be to twist both logic and experience in a most uncomfortable knot.' " (*Id.* at p. 776.) For the reasons we have stated, *ante,* we disagree to the extent that this decision may be read to hold that failure to claim an item of incriminating property is not a circumstance supporting the conclusion that it has been abandoned.

In any event, *May* is factually distinguishable because here there was unequivocal evidence that defendant intentionally discarded the telephone based upon his flight from the scene, his failure to return to retrieve his phone, and his own testimony that upon realizing he left it at Walgreen's he did not go back to retrieve it, and decided it would be wise not to try to reclaim it.

circumstances, objectively reasonable. (*Id.* at pp. 1046–1047.) Similarly, here, defendant's testimony that he did not intend to drop the phone, and wanted it back, is immaterial where the objective circumstances were that he left his phone unattended in a public place, fled the scene, and made no attempt to retrieve it. "[A]n important consideration in evaluating a privacy interest is whether a person has taken normal precautions to maintain his or her privacy." (*People v. Shepherd* (1994) 23 Cal.App.4th 825, 828–829 [28 Cal.Rptr.2d 458] (*Shepherd*).) Leaving an item unattended in a public place evidences a "relinquishment of any reasonable expectation of privacy and security in regard to it." (*United States v. Alewelt* (7th Cir. 1976) 532 F.2d 1165, 1167; see *U.S. v. Thomas* (D.C. Cir. 1989) 275 U.S. App. D.C. 21 [864 F.2d 843, 846–847] [defendant had no expectation of privacy in gym bag he left on floor of public hallway in apartment complex despite his intent to retrieve it at a later time]; *People v. Ayala, supra,* 24 Cal.4th at p. 279 [defendant who left containers at the automobile body shop while there as an invitee had no expectation of privacy in the premises, and abandoned them].) Defendant did not take normal precautions to maintain his privacy when he left his cell phone at Walgreen's, a business open to the public, and did not return to retrieve it.[3]

■ Two California cases, *Shepherd, supra,* 23 Cal.App.4th 825, and *People v. Juan* (1985) 175 Cal.App.3d 1064 [221 Cal.Rptr. 338], indirectly support the conclusion that when the owner fails to take normal precautions after leaving property unattended in a public place, the owner has relinquished a reasonable expectation of privacy, even when the property is forgotten or lost. Although these cases did not entail review of a finding of abandonment, in each the court held that the owner of such property had no reasonable expectation of privacy under the circumstances. In *Shepherd,* the defendant left her purse in a stolen truck and sought to challenge a search of the purse that disclosed identifying documents. (*Shepherd, supra,* at pp. 827–828.) The court rejected her contention that she retained a reasonable expectation of privacy in her purse. It held that "[w]hether a woman has a

---

[3] The case of *State v. Philbrick* (Me. 1981) 436 A.2d 844, upon which defendant relies, is distinguishable. In that case, although the defendant left his knapsack on the side of the road when he flagged down a car to get medical attention for a gunshot wound, he told the police that it was his, and "[made] no attempt . . . to discard it or disassociate it from himself." (*Id.* at p. 855.) By contrast, here defendant did not tell the police the phone belonged to him, resolved not to retrieve it when he realized where he had left it, and disassociated himself from it as much as possible. The only other case defendant cites, *United States v. Markland* (D.Conn. 1980) 489 F.Supp. 932, held that a bag expelled from a vehicle by the force of a collision was not abandoned when the owner was taken from the scene for medical treatment before he could collect his possessions. In addition to the obvious factual differences, we note the decision was reversed on appeal, albeit on other grounds. (*United States v. Markland* (2d Cir. 1980) 635 F.2d 174, 176–177.)

legitimate privacy interest in the contents of her purse depends in part on where the purse is located. Thus, a woman who *forgetfully* leaves her purse on a chair at the dress shop may reasonably expect someone to look inside it to ascertain the rightful owner. [Citation.] Similarly, one who leaves her purse in a stolen vehicle *may reasonably expect someone to look in the purse to ascertain the identity of the victim or the thief.* In short, by leaving her purse in a stolen vehicle, defendant failed to take normal precautions to maintain her privacy interest in the purse." (*Id.* at p. 829, italics added.)

In *People v. Juan, supra*, 175 Cal.App.3d 1064, the court applied a similar analysis to conclude that the defendant did not have a reasonable expectation of privacy in a jacket left draped upon a chair in a public restaurant. The court held: "An individual who places a jacket at an empty table in a restaurant must reasonably expect that the coat will be touched or handled by either an employee or by a member of the public who wishes to clean up or sit at the table. Indeed, an individual who leaves behind an article of clothing at a public place most likely *hopes* that some Good Samaritan will pick up the garment and search for identification in order to return it to the rightful owner. By leaving his jacket unattended in the restaurant, [defendant] exposed it to the public and he cannot assert that he possessed a reasonable expectation of privacy in the pockets of his jacket." (*Id.* at p. 1069.)

CONCLUSION

■ The Fourth Amendment does not protect subjective expectations of privacy that are unreasonable or otherwise "illegitimate." (*Hudson v. Palmer* (1984) 468 U.S. 517, 526–527 [82 L.Ed.2d 393, 104 S.Ct. 3194]; see also *Smith v. Maryland* (1979) 442 U.S. 735, 740 [61 L.Ed.2d 220, 99 S.Ct. 2577].) Here, defendant left his telephone unattended in a public place of business. He fled the scene of the crime, and made no attempt to retrieve his phone, realizing that to associate himself with it would be incriminating. Under these circumstances any subjective expectation of privacy he may have had with respect to the phone was simply not objectively reasonable. All objective indications were that the phone was abandoned. We conclude that, by his conduct, defendant objectively manifested an intent to abandon his property and thereby relinquished any reasonable expectation of privacy with respect to it. Indeed, were it not for the incriminating circumstances, defendant, and any other reasonable person, would no doubt have hoped and expected that someone would examine the phone to ascertain the owner, and would have been grateful if someone had done so, and returned it to him.

The judgment is affirmed.

Marchiano, P. J., and Swager, J., concurred.